JOE BOYET, Respondent v. JAMES C. DAVIS, Director General, Appellant.*

In the Springfield Court of Appeals, March 6, 1925.

1. **MASTER AND SERVANT: Federal Employers' Liability Act: Assumption of Risk.** Under the Federal Employers' Liability Act (U. S. Comp. Stat., secs. 8657-8665) an employee entering upon a contract of employment assumes all the risks and dangers ordinarily incident to the employment, and also risks caused by the employer's negligence which are obvious and fully known to the employee and appreciated by him, or so plainly observable that he must be presumed to know them, but the employee is not required to use even ordinary care in discovering dangerous defects, and knowledge will not be imputed unless the defects are plainly observable.

2. ———: ———: ———: **Fellow Servants.** Under the Federal Employers' Liability Act (U. S. Comp. Stat., secs. 8657-8665) the neg-

217 Mo. App.—33.

ligence of a co-employee, or fellow servant, as to the assumption of risk, is plac · : upon the same ground and is governed by the same rv'es as those .iat apply to the negligence of the employer.

3.  ————: Assumption of Risk: Servant Held, Under Facts, to Have Assun ed Risk of Injury. In action under Federal Employers' Liability Act (U. S. Comp. Stat., secs. 8657-8665) for rupture caused to section hand by lifting of motor car, evidence *held* to show that as matter of law he assumed risk of injury, where every act of negligence of which he complained, namely that there were not enough men to handle the car properly, and that part of the men on the job were shirkers or incapacitated, were fully known to him and appreciated by him, and he had worked many years at the kind of work involved.

---

*Headnotes 1. Master and Servant, 26 Cyc., p. 1180; 2. Master and Servant, 26 Cyc., p. 1182; 3. Master and Servant, 26 Cyc., p. 1455.

Appeal from the Circuit Court of Butler County.—*Hon. Almon Ing,* Judge.

REVERSED.

*W. F. Evans,* of St. Louis, and *Ward, Reeves & Oliver,* of Caruthersville, for appellant.

(1)   The court erred in refusing to give the defendant's instruction in the nature of a demurrer to the evidence offered at the close of plaintiff's case.   (a) The answer of the defendant affirmatively pleads that the plaintiff at the time of his injury was employed in interstate commerce, and the reply filed by the plaintiff specifically admits that he was so employed.   So it is manifest in this case that the trial court was in error in trying this case and submitting it to the jury upon the theory that the plaintiff could not assume the risk occasioned by the alleged negligence of his employer.   In other words, the trial court followed the Missouri rule on this question, whereas it should have followed the Federal rule, since the case is one arising under the Federal Employer's Liability Act.   Pryor v. Williams, 254 U. S.

43, 65 L. Ed. 120; Chicago, R. I. & P. R. Co. v. Ward, 252 U. S. 18, 64 L. Ed. 430; Seaboard Air Line Co. v. Horton, 233 U. S. 492, 58 L. Ed. 1062; Jacobs v. Southern R. Co., 241 U. S. 229, 60 L. Ed. 970; Quigley v. Hines, 235 S. W. 1050; See v. Railway, 228 S. W. 518; Walker v. Railway, 243 S. W. 261. (b) The plaintiff's own evidence concedes that he had accurate and superior knowledge of all the matters alleged to have been negligent on the part of defendant; that is, the plaintiff well knew and appreciated the weight of the motor car in question, of the number of men required to handle same, of the alleged physical defects of Fudge and of the shirking proclivities of Secrest. Plaintiff had had thirty-five years experience as a section hand, had been a foreman of a section crew for eighteen years, and had lifted and handled this motor car in question with the same two men for four months. He therefore had accurate and complete knowledge of all the matters complained of and he also testifies that he well knew that three men could not safely handle this car and he also knew that it was dangerous to undertake to handle it with Fudge and Secrest as his helpers, although he never at any time made any complaint to the foreman of any of these matters. He therefore assumed the risk and danger of his employment and he cannot recover. Seaboard Air Line R. Co. v. Horton, 233 U. S. 492, 57 L. Ed. 1062; Boldt v. Ry. Co., 245 U. S. 445, 62 L. Ed. 385; Chicago R. I. & P. R. Co. v. Ward, 252 U. S. 18, 64 L. Ed. 430; Walker v. Railway, 243 S. W. 261; See v. Railroad, 228 S. W. 518. And the Employer's Liability Act places a co-employee's negligence, when it is the ground of action, in the same relation as that of the employer upon the matter of assumption of risk. Chicago R. I. & P. R. Co. v. Ward, 252 U. S. 18, 64 L. Ed. 430; Ches. & Ohio R. Co. v. DeAtley, 241 U. S. 313; Ches. & O. R. Co. v. Proffitt, 241 U. S. 462, 60 L. Ed. 1102; Erie R. Co. v. Purucker, 244 U. S. 320, 61 L. Ed. 1166. (c) The above cases hold that when the employee knows of the defect in the appliances and appreciates the risk that

is attributable to such defect, then if he continues in the employment without objection or without obtaining from the employer an assurance that the defect will be remedied, he assumes the risk, even though it arises out of the master's breach of duty. It is further held that when the work requires men to do it, the men engaged therein are classed as appliances. Haviland v. Railroad, 172 Mo. 106; Thorpe v. Railroad, 89 Mo. 663; Wood on Railroads, p. 1758. (d) We go further in this case and assert that the plaintiff could not recover even under the Missouri rule, unaffected by a Federal statute. Haviland v. Railroad, 172 Mo. 106; Epperson v. Cable Co., 155 Mo. 346; Leitner v. Grieb, 104 Mo. App. 173; Pulley v. Oil Co., 136 Mo. App. 172; Slagel v. Lbr. Co., 138 Mo. App. 432; Harbacek v. Iron Works Co., 229 S. W. 803; Thomas v. Cement Co., 245 S. W. 575; Emery v. Railroad, 246 S. W. 335; Ryan v. Lea, 249 S. W. 685. (e) Under the authorities last cited above, the plaintiff, in continuing in the work under the circumstances and with the full and complete knowledge he testifies he had, not only assumed the risks involved, but under the Missouri rule he was guilty of such contributory negligence as a matter of law as will preclude a recovery. Since this contributory negligence was shown by his own testimony it was not necessary to plead it. Mueller v. Puring Co., 254 S. W. 722; Boesel v. Wells-Fargo & Co., 260 Mo. 472; Collett v. Kuhlman, 243 Mo. 591; Schlereth v. Railroad, 96 Mo. 514. (2) The court erred in refusing to give to the jury each and all of the following instructions offered on behalf of the defendant, to-wit: Nos. C, D, E, F, 1, 2, 3, 4, 5 and 6. By the trial court's refusal of each and all of the foregoing instructions offered on behalf of the defendant, it is made clear that the trial court misconceived the law applicable to this case. In one form or another the defendant sought in each of the foregoing instructions to submit to the jury the defendant's pleaded defense of assumption of risk. We think each and all of the instructions should have been given, especially those not peremptory in their

character. Said instructions Nos. 5 and 6 should at least have been given, if the plaintiff was entitled to go to a jury at all. The court gave no other instructions on behalf of the defendant submitting the question of assumed risk. See authorities, supra.

*Henson & Woody,* and *Sam M. Philips,* all of Poplar Bluff, for respondent.

(1) That the facts in this case convict the defendant of negligence, see the following cases in point: Levecke v. Curtis Mfg. Co., 193 S. W. 985, 197 Mo. App. 262; Meily v. St. Louis, etc., Ry. Co., 114 S. W. 1013, 215 Mo. 567; McMullen v. Railroad, 60 Mo. App. 231; Tull v. Railroad, 216 S. W. 572; Fogus v. Railroad, 50 Mo. App. 250; Bowman v. K. C. Electric Light Co., 213 S. W. 161; Smith v. Greer, 257 S. W. 829; Heady v. Wright Tie Co., 262 S. W. 447. (2) The plaintiff in this case did not, as a matter of law assume the risk of obeying the negligent order given him by his master. Risk not assumed where the master ordered the servant to go in front of an approaching train and remove rocks from the track, see, Stephens v. Hannibal & St. Joe Ry. Co., 96 Mo. 207. See also the following cases which hold that the fact that plaintiff knew of the conditions causing the danger and realized the danger, will not, as a matter of law, defeat his recovery. Loftis v. Kansas City, 156 Mo. App. 683, 137 S. W. 993; Morris v. Frisco, 168 S. W. 323, 184 Mo. App. 106; Canterbury v. Kansas City, 149 Mo. App. 502, 131 S. W. 120; Howard v. New Madrid, 148 Mo. App. 57, 127 S. W. 630; Coffey v. Carthage, 186 Mo. 573; Herbling v. Warrensburg, 204 Mo. 604, 103 S. W. 36; Diamond v. Kansas City, 120 Mo. App. 185, 96 S. W. 492; Lueking v. Sedalia, 167 S. W. 1152, 180 Mo. 203; Perette v. City, 162 Mo. 238, 62 S. W. 448; Boland v. Kansas City, 32 Mo. App. 8; Maus v. Springfield, 101 Mo. 613; Perrigo v. City, 185 Mo. 274; Lower v. Sedalia, 74 Mo. App. 431. The undisputed evidence in this case is that

Boyet v. Davis.

when the motor car in question had reached the point that plaintiff was injured, that defendant's foreman ordered the plaintiff and his co-laborers to take the car off the track and that plaintiff was injured in attempting to obey the command of his master: The plaintiff did not assume the risk of obeying this negligent command and doing the work in question, unless the danger was fully appreciated and it was so glaring that no person of ordinary prudence would consent to encounter it. A servant acting under the commands or threats of his master does not assume the risk incident to the act commanded, unless the danger incurred is fully appreciated, and is such that no person of ordinary prudence would consent to encounter it. 26 Cyc. 1221, and cases cited too numerous to be set out herein. The mere fact that the servant knows that there is some danger will not defeat his right to recover (on the ground of assumption of risk), if in obeying, he is acting with ordinary care under the circumstances. 26 Cyc. 1222-23, footnote, 99 and cases cited. The above rules apply as well when the risk is without, as when it is within the scope of the servant's employment. 26 Cyc. 1223, and cases cited. Plaintiff, as a matter of law, did not assume the risk of his injury in obeying the command of his master. We do not believe that the court should say as a matter of law, that under the facts in this case that the danger of obeying the command given to him was so glaring and imminent that a reasonably prudent person would not have obeyed. Unless the court can so hold, as a matter of law, it cannot say, as a matter of law, that plaintiff assumed the risk of obeying the command. At this point we desire to call the attention of the court that there is a difference in the law relating to assumption of risk and contributory negligence, where the servant is obeying the command of his master immediately after the command and in his presence, than what the law is relative to assumption of risk where the servant is carrying out the usual and ordinary duties of his occupation.

In the case of commands, the law is that the servant does not assume the risk unless the doing of the work commanded is so glaringly dangerous that a reasonably prudent man would not undertake it.   See authorities cited, supra; Humphreys v. Lusk, 196 S. W. 53, 196 Mo. App. 442; Henderson v. Wilson Stove, etc., Co., 197 S. W. 177; Dodge v. Mfg. Coal & Coke Co., 115 Mo. App. 501; Flynn v. Railroad, 78 Mo. 195.   The fact that a railroad ·brakeman knew that the engineer was incompetent did not bar his recovery on the ground ·of assumption of risk for injuries received by reason of the incompetence.  Williams v. Mo. Pac. R. R. Co., 109 Mo. 475.  The instruction that if the jury found that obeying an order of defendant's foreman at the time and the circumstances was extra hazardous, but did not plainly imperil plaintiff's life and limb, and that in obeying the order he was injured without negligence on his part, he was entitled to recover, furnished the proper limit to plaintiff's right to recovery.   Stephens v. Hannibal & St. Joe R. R. Co., 96 Mo. 207; See also: Bane v. Irwin, 172 Mo. 306; Self v. White, 155 S. W. 840, 169 Mo. App. 709; Gilbert v. Hilliard, 222 S. W. 1027. Where a quarryman was injured while removing a stone with a crow bar, as he was ordered to do, instead of being furnished a derrick, an instruction that if the danger was not so imminent and threatening as to prevent a reasonably prudent person from undertaking the same, the plaintiff did not assume the doing of the work at his own peril, held proper.   Walsh v. Union Quarry & Const. Co., 223 S. W. 1082, 205 Mo. App. 159; Levecke v. Mfg. Co., 197 Mo. App. 262, 277, 193 S. W. 985, 987.

BRADLEY, J.—Plaintiff sued· to recover for a rupture alleged to have been received while working as a section hand on the Frisco railroad on April 26, 1919. The cause was filed in Wayne county, but the venue was changed to Butler county where a trial was had to a jury on January 11, 1924.  Plaintiff obtained a judgment for $2000, and defendant appealed.

The charges of negligence relied upon are (1) the failure to furnish a sufficient number of able-bodied, competent and willing men to do with reasonable safety the work in which plaintiff was engaged at the time of his alleged injury, to-wit, the removing from the railroad track a motor car used by the section crew; (2) the alleged negligence of defendant through the section foreman in directing the motor car to be removed under the circumstances; and (3) the alleged negligence of plaintiff's fellow servants in failing to use reasonable care to assist plaintiff in removing the motor car. The answer is a general denial, and a plea of assumption of risk. Also defendant alleged in its answer that the work in which plaintiff was engaged when injured was in furtherance of interstate commerce. The reply denied generally the new matter, but admitted that the work was in furtherance of interstate commerce, and the cause was tried as one under the Federal Employers' Liability Act. [U. S. Comp. Stat., sec. 8657 et seq.]

Defendant assigns error on the refusal of the demurrer, and on the instructions.

At the time of the alleged injury plaintiff resided in Williamsville, Mo., and was a member of the section crew. The crew consisted of plaintiff, then about sixty-four years of age, Everett Secrest, Arthur Fudge, and the foreman Bill Jones. Fudge had been on sick leave for about a month, and returned back to work the day of plaintiff's alleged injury, but was still afflicted with a boil under his arm. Secrest, according to plaintiff, was an individual who "had a habit of shirking his work in different ways. He would shirk on you if you were lifting a tie with him, for instance a good big tie; he would always make the other fellow do the heavy lifting." On the morning of plaintiff's alleged injury the crew had gone out on the motor car about four miles northeast of Williamsville to the place of work, when they stopped, the tools or a part of them were unloaded, and the motor car removed from the track by lifting up the

Boyet v. Davis.

rear end and carrying it around until the front trucks dropped off the rails. In removing the motor car on the day in question plaintiff said that "Secrest went to the left hand corner, I went to the right hand corner and Mr. Fudge to the middle, and we swung to the north side." The foreman did not assist in removing the motor car from the tracks. The motor car weighed between 1500 and 1600 pounds and carried at the time 300 pounds of junk iron and tools and was about seven feet and six inches in length. At the place where the motor car was removed the spaces between the ties were filled with gravel up even with the ties, and the top of the rails was about four and a half inches above the top of the ties.

Plaintiff claims that he was ruptured by the weight thrown upon him when the end of the motor car was swung around to the north causing the front trucks to drop from the rails. He described the manner of his injury thus: "When the wheels dropped down the car ruptured me. The car made a sudden jar, sudden jerk, a sudden weight on me. It was when the car dropped down from the rails on the ties—that's when it caused me to be ruptured. I didn't notice what the other two men were doing at the time, but this sudden heavy weight gave me a sudden breakdown—a sudden giving away. I had hold of a little rod, a handle on the end of the car."

Defendant's demurrer is founded upon the contention that plaintiff as a matter of law assumed the risk. Under the Federal Employer's Liability Act an employee entering upon a contract of employment assumes all the risks and dangers ordinarily incident to the employment, and also risks caused by the employer's negligence which are obvious and fully known to the employee and appreciated by him, or so plainly observable that he must be presumed to know them. But the employee is not, under the act, required to use even ordinary care in discovering dangerous defects, and knowledge will not

be imputed unless the defects are plainly observable. [Seaboard Air Line Ry. v. Horton, 233 U. S. loc. cit. 304, 58 L. Ed. 1062; McIntyre v. Railroad, 227 S. W. (Mo. Sup.) 1047, and cases there cited.] A writ of *certiorari* was denied in the McIntyre case by the Supreme Court of the United States. [See 255 U. S. 573, 65 L. Ed. 792.] Under the act the negligence of a co-employee, a fellow servant, as to the assumption of risk, is placed upon the same ground and is governed by the same rules as those that apply to the negligence of the employer. [Chicago, Rock Island & Pac. Ry. Co., et al. v. Ward, 252 U. S. 18, 64 L. Ed. 430.]

Assuming that defendant and plaintiff's co-employees were negligent, the question then is: Did plaintiff assume the risk? Plaintiff was the only witness. He had had thirty-five years experience in a section crew, and for eighteen years was a foreman of a crew. As to what he knew about the situation of which he complains, he testified as follows: Secrest worked for me while I was section foreman; I was familiar with him. At the time of this injury I had known him for a great many years, he had worked under me as section foreman. I knew how he worked. He shirked on his job; I don't know exactly how long he had been doing that, but he had, off and on, all the time I worked on the road there with Jones for four months. He shirked his job while he was under me as section foreman. I knew that this fellow was a shirker for several years, and I knew that fact when I undertook to lift this car off the rail, with him assisting me. I had lifted this car every day with him and Fudge for four months, except Sundays. We lifted all the way from two to four times a day. Yet, I say there should have been five or six men to lift this end of the car off the track. We had not been using but three men during the four months that I worked there; been doing that ever since I commenced work for the defendant, just using three, and I was one of the three. These two other fellows wasn't working there all the

time. Secrest had been working there about four months with me, and he had been helping handle that end of the car, taking it off the track, I had lifted it off the track before with the same men hold of it, when it had the dinner buckets, flags, etc., on it; had done that a number of times before I got hurt. Fudge was working there when I went to work; he had been working longer than I had, and I knew what sort and character of man he was, with reference to doing his work, at the time I got injured. I also knew about the quality of Secrest's work when I got hurt. I knew all the time, from the time I commenced work there until I got hurt, that there should have been five or six men to lift it, instead of three; I knew that when I first went to work there, and I continued to work for four months after that. I had no business to tell Jones that Secrest was a shirker; I didn't tell him anything about Fudge not being able to do his work. Mr. Jones knew he wasn't able to do his work, and I knew it too.''

Plaintiff concedes that he knew, when he entered upon this employment, of every danger of which he complains. He knew that there were not enough men in the crew to handle this motor car as it was required to be handled in carrying on the work required to be done. He knew that Secrest was a shirker, and when he started to lift the motor car from the rails when he was injured he knew that Fudge was incapacitated. According to plaintiff's evidence every act of negligence of which he complains was fully known to him and was fully appreciated by him. Near the close of plaintiff's evidence he says: ''I said it would take five or six men to take this car off the track in safety. I always knew that. I knew it wasn't safe for three men to lift it off, but I had to do it or get off the road. I knew that when I first commenced work there. I knew it was dangerous for just three men to handle the car; I knew that when I commenced working there four months before.''

Measured by the law of assumption or risk under the Federal Employers' Liability Act reasonable men could not differ as to the knowledge by plaintiff of the acts of negligence of which he complains, and his full appreciation of them. We are constrained to hold that plaintiff as a matter or law assumed the risks of which he complains. Having reached this conclusion it is not necessary to dispose of other assignments. The judgment should be reversed and it is so ordered. *Cox, P. J.,* concurs; *Bailey, J.,* not sitting.